**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DYTERIUS ROBY,

        Petitioner,                    Civil No. 2:16-CV-12727
                                        HONORABLE SEAN F. COX
v.                                   UNITED STATES DISTRICT JUDGE

S.L. BURT,

        Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING THE MOTION FOR AN EVIDENTIARY HEARING AND FOR THE APPOINTMENT OF COUNSEL, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL _IN FORMA PAUPERIS_**

      Dyterius Roby, ("petitioner"), presently confined at the Muskegon Correctional Facility in Muskegon, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for assault with intent to commit murder, Mich. Comp. Laws, § 750.83; carrying a weapon with unlawful intent, Mich. Comp. Laws, § 750.226; felon in possession of a firearm, Mich. Comp. Laws, § 750.224f; and felony-firearm, Mich. Comp. Laws, § 750.227b. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I. Background

      Petitioner was convicted following a jury trial in the Saginaw County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals's opinion, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). _See e.g. Wagner v. Smith,_ 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises out of a shooting incident that occurred on the morning of April 24, 2009. Cornelius Owens testified that at approximately 10:15 a.m. that morning, he was walking his dog into his backyard after visiting with his neighbors. As he

1

entered the backyard, he encountered Roby, who began shooting at him.  Owens ran out of the yard and across the street as Roby gave chase and continued to shoot at him.  Roby's gun then became jammed, which gave Owens a chance to hide behind a garage.  Having apparently lost track of Owens, Roby then left the scene.  Owens suffered several gunshot wounds, for which he was treated at the hospital.  The shooting was allegedly in retaliation for a recent altercation that had occurred between Owens and two other men from the neighborhood.

Owens's testimony was corroborated by eye witness Maurice Harris, who testified that he saw Roby chasing and shooting at Owens.  Further, Detective Jason Ball, who the trial court qualified as an expert in forensic analysis of cellular data, testified that a cellular phone believed to be in Roby's possession on the morning of April 24th was tracked as having been in the vicinity of the shooting between approximately 9:30 and 10:30 a.m.

Roby testified in his own defense and denied any involvement in the shooting.  He testified that he was asleep at his girlfriend's house until approximately 10:40–11:00 a.m.  Roby also testified that the cellular phone that was introduced into evidence as allegedly belonging to him actually belonged to his brother.  And although Roby admitted that he sometimes used his brother's phone, he denied he had possession of it on the day of the shooting.  However, Roby's girlfriend contradicted his testimony, testifying that he had that phone with him when she saw him on the afternoon of April 24, 2009.

*People v. Roby*, No. 301608, 2011 WL 5067252, at * 1 (Mich. Ct. App. Oct. 25, 2011).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 491 Mich. 909; 810 N.W. 2d 907

(2012).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People*

*v. Roby,* No. 09-032607-FC (Saginaw Cty.Cir.Ct., July 2, 2014).  The Michigan appellate courts

denied petitioner leave to appeal. *People v. Roby,* No. 324411 (Mich.Ct.App. Mar. 12, 2015); *lv.*

*Den.* 499 Mich. 913, 827 N.W. 2d 287 (2016).

Petitioner filed a petition for writ of habeas corpus, seeking relief on the following grounds:

I. Where newly discovered evidence demonstrates Petitioner's actual innocence, should this gateway showing provide equitable tolling?

II. The state court erred constitutionally when it allowed an unqualified expert to

2

testify.

III. Defense counsel was constitutionally ineffective for failing to request a stipulation that Mr. Roby was ineligible to possess a firearm and not objecting to testimony of his parole and prior prison status[.]

IV. The prosecutor's numerous instances of prosecutorial misconduct deprived Petitioner of a fair trial, hence, habeas relief is appropriate under both, 28 USC 2254(d)(1)-(2).

V. The trial court's instruction to the jury that they may infer that Petitioner's intent to kill the victim could be proved if he used a dangerous weapon violated his Sixth Amendment rights and the *Morissette v United States*, 342 US 246 (1952), decision.

VI. Petitioner was denied his right to effective assistance of counsel due to counsel's failure to investigate and call several eyewitnesses who would have testified that Petitioner was not the shooter.

VII. Petitioner was denied the right to effective assistance of appellate counsel contrary to the Sixth Amendment which resulted in issues with substantial merit being overlooked which was prejudicial to Petitioner's appeal of right, had the issues been raised Petitioner's conviction would have been vacated.

Respondent filed a motion to dismiss the petition on the ground that it was filed outside of the one year statute of limitations contained in 28 U.S.C. § 2244(d)(1). This Court denied the motion to dismiss, finding that the petition was timely filed. Respondent was ordered to file an answer addressing the merits of the petition within sixty days of the Court's order. *Roby v. Burt*, No. 2:16-CV-12727, 2017 WL 1091257 (E.D. Mich. Mar. 23, 2017).

Respondent has now filed an answer to the petition. Petitioner filed a reply to the answer as well as a motion for an evidentiary hearing and for the appointment of counsel.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant

to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 562 U.S. at 102. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III. Discussion

**A. Claim # 1. The newly discovered evidence claim.**

Petitioner first claims that he has newly discovered evidence in the form of affidavits from Mr. Patrick Atkins and Mr. Johnny King that establishes his actual innocence, so as to equitably toll the limitations period in this case.

This Court previously determined that the petition was timely filed, thus, any equitable tolling argument is now moot and need not be addressed by the Court. *See e.g. Scott v. Collins,* 286 F. 3d 923, 931 (6th Cir. 2002).

To the extent that petitioner raises a freestanding actual innocence claim, he is not entitled to habeas relief.

5

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that a habeas petitioner's claim of actual innocence based on newly discovered evidence fails to state a claim for habeas relief in the absence of any independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id., see also McQuiggin v. Perkins,* 133 S. Ct. 1924, 1931 (2013)("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"). Freestanding claims of actual innocence are non-cognizable on federal habeas review. *See Cress v. Palmer,* 484 F.3d 844, 854-55 (6th Cir. 2007)(collecting cases). Petitioner is not entitled to relief on any such claim.

**B. Claim # 2. The expert witness claim.**

Petitioner next contends that the trial court judge erred in ruling that Detective Jason Ball could testify as an expert on cellular phone data, because Detective Ball lacked the qualifications to testify as an expert and his testimony was not supported by the requisite underlying data.

The Michigan Court of Appeals rejected petitioner's claim:

During trial, defense counsel requested a separate record in order to question Saginaw City Police Department Detective Jason Ball regarding his expertise in forensic analysis of cellular data. Detective Ball testified that he had received special training relating to forensic analysis of cellular data. He explained that, although he had no formal certification, in October 2007, he took a two-day training class on the subject. Detective Ball claimed that at that time, that class was the only training available for forensic data analysis of cellular phones. He further explained that during that training he learned about the history of cell phones and cellular service systems, how to retrieve and analyze data that is stored by cell phone companies, and how to track cell phones to pinpoint locations at the time of usage. Detective Bell stated that, since that training, he had worked on numerous cases in which he was asked to analyze data to determine "where a particular cell phone was at the time that certain calls were made[.]" And in one homicide case, he testified at trial regarding the location of several cell phones at the time of the murder, which led to several convictions.

6

Detective Ball then testified regarding the process of his data analysis. According to Detective Bell, he first looks at the phone records provided by the servicing company, in this case Sprint Nextel. Each company's records are different, but, based on his training, he is able to decipher when certain calls were sent or received, and when each call ended. Based on those records he then looks at global positioning system (GPS) coordinates to locate the specific tower(s) through which the call was sent. Detective Ball also testified that, although he was not an engineer, he was capable of testifying to signal strength of towers in order to determine which tower a call would most likely "hit[ ] off" at any particular location.

Defense counsel objected to Detective Ball being qualified as an expert, taking issue with that fact that Detective Ball could not determine what tower a call hit off of without looking at other records that were not admitted into evidence. However, after noting the objection, the trial court allowed Detective Ball to testify.

After explaining his qualifications and process to the jury, Detective Ball testified that, as part of the investigation in this case, he was asked to determine where Roby's cell phone was at the time of the shooting. Based on his assessment of the data, he concluded that the cell phone was in the area of the shooting at the time of the incident on April 24, 2009. Specifically, Detective Ball testified that the phone was used 12 times between 9:41 a.m. and 10:28 a.m. in the vicinity of shooting. According to Detective Ball, at or around 10:30 a.m., the phone then started moving away from the area of the shooting. Detective Ball also testified that several of the calls were made to and from a phone number belonging to one of the men with whom Owens had the preceding altercation. On rebuttal, Detective Ball further testified that he was able to track Roby's phone as being in the areas where his girlfriend testified they went on the afternoon of April 24th.

## D. ANALYSIS

Roby argues that the trial court erred in allowing Detective Ball to testify as an expert in cell phone data analysis because he was "severely lacking in qualifications." Specifically, Roby takes issue with that facts that Detective Ball's training consisted of only one two-day training course, he was not an engineer qualified to testify in depth about tower signal strength, and it was necessary for Detective Ball to look at records other than the cell phone records themselves to determine the location of the subject tower(s). But we find Roby's objections without merit. Detective Ball testified that the training he received was the only training available at the time and that he had used that training in numerous other cases, including one in which his testimony aided in the conviction of several murderers. Moreover, he explained in detail his process of analyzing the cell phone records and then cross-referencing them with relevant GPS data to pinpoint the tower through which a particular cell phone call was transferred. We therefore conclude that the trial court did not abuse its discretion in qualifying Detective Ball as an

expert and allowing him to testify regarding the location of Roby's cell phone at the time of the shooting.

*People v. Roby*, 2011 WL 5067252, at * 2–3.

Federal habeas corpus relief does not lie for errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

The admission of expert testimony in a state trial involves an issue of state law which does not warrant federal habeas relief, unless the evidence violates due process or some other federal constitutional right. *See Keller v. Larkins,* 251 F. 3d 408, 419 (3rd Cir. 2001). A federal district court cannot grant habeas relief on the admission of an expert witness' testimony in the absence of Supreme Court precedent which shows that the admission of that expert witness' testimony on that particular subject violates the federal constitution. *See Wilson v. Parker,* 515 F.3d 682, 705-06 (6th Cir. 2008).

Petitioner relies primarily on the United States Supreme Court case of *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579 (1993) to support his claim that Detective Ball's expert testimony was inadmissible. However, the Supreme Court's holding in *Daubert* involves the application of the Federal Rules of Evidence, which are not relevant to determining the constitutionality of a state court conviction. *See Norris v. Schotten,* 146 F. 3d 314, 335 (6th Cir. 1998); *see also Anderson v. Jackson*, 567 F. Supp. 2d 973, 983 (E.D. Mich. 2008)(*Daubert* decision concerning the admission of expert testimony was concerned with the Federal Rules of Evidence and, thus, did not apply to state criminal proceedings).

Petitioner also argues that his claim is supported by the Sixth Circuit's holding in *Ege v.*

8

*Yukins*, 485 F.3d 364 (6th Cir. 2007).

Petitioner cannot use the *Ege* decision to obtain habeas relief.

First, a habeas court can only rely on the holdings of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether that decision was contrary to, or an unreasonable application of, clearly established federal law. *Mitzel v. Tate,* 267 F. 3d 524, 530-31 (6th Cir. 2001). A habeas court cannot look to the decisions of this circuit, or other courts of appeals, when deciding whether a state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *Id.* Sixth Circuit precedent thus does not constitute "clearly established Federal law, as determined by the Supreme Court" and thus "cannot form the basis for habeas relief under [the] AEDPA." *Parker v. Matthews,* 567 U.S. 37, 48–49 (2012). The Sixth Circuit's holding in *Ege* cannot serve as a basis for granting petitioner habeas relief. *See Blackmon v. Booker,* 696 F.3d 536, 553 (6th Cir. 2012).

Secondly, the expert evidence that was admitted in *Ege* was vastly different from Detective Ball's testimony. "*Ege* held that the admission of expert testimony without any foundation—that a bite mark on the victim established 3.5-million-to-one odds that Ege was the murderer—violated Ege's due process right to a fair trial under *Chambers v. Mississippi*, 410 U.S. 284 . . . (1973). . .." *Desai v. Booker*, 732 F.3d 628, 632 (6th Cir. 2013)(ellipse added). In the present case, Detective Ball's expert testimony on cellular phone data was supported by his education and training, sufficient facts and data, and Detective Ball's testimony on how he applied reliable principles and methods that he learned from his training to the facts and data in this case. Moreover, Detective Ball's analysis of data to show the approximate location of a phone, which petitioner denied possessing on the day of the shooting "has few parallels" to "[f]oundation-free expert testimony that

there is a 3.5-million-to-one likelihood of a match between a criminal defendant and a murderer .

. . ." *Desai*, 732 F.3d at 632 (ellipse added).  Petitioner is not entitled to habeas relief on his second

claim. *Id.*

### C.  Claims # 3 and # 6.  The ineffective assistance of trial counsel claims.

Petitioner in his third and sixth claims alleges that trial counsel was ineffective.

To show that he was denied the effective assistance of counsel under federal constitutional

standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that,

considering all of the circumstances, counsel's performance was so deficient that the attorney was

not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466

U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's

behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words,

petitioner must overcome the presumption that, under the circumstances, the challenged action might

be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such

performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice

is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'"

*Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112).  The

Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of

ineffective assistance of counsel, and not the state, to show a reasonable probability that the result

of the proceeding would have been different, but for counsel's allegedly deficient performance. *See*

*Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

10

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

In his third claim, petitioner argues that trial counsel was ineffective for failing to seek a stipulation that petitioner was ineligible to possess a firearm and for failing to object to testimony about the nature of his prior convictions, as well as his parole and prior prison status.

The Michigan Court of Appeals rejected petitioner's claim:

> Roby argues that defense counsel's failure to stipulate to the underlying felonies was ineffective because it opened the door for the jury to hear that he was on parole for four prior felonies involving drugs and unarmed robbery. Roby argues that this testimony was clearly prejudicial. However, based on our review of the record, we cannot conclude that defense counsel was ineffective for allowing the testimony. Because a stipulation could have left the jury wondering whether Roby had actually

11

been convicted of more serious, violent offenses, the decision to not stipulate was a valid trial tactic.

*People v. Roby*, 2011 WL 5067252, at * 4.

The Michigan Court of Appeals' rejection of petitioner's ineffective assistance of counsel claim was reasonable. Trial counsel was not ineffective for failing to stipulate that petitioner had prior felony convictions, because it might have been sound strategy for counsel to allow petitioner's prior convictions to be admitted, in order to prevent the jurors from speculating that petitioner might have been convicted of more serious offenses. *See e.g. Bradley v. Birkett*, 192 F. App'x. 468, 476 (6th Cir. 2006). Moreover, petitioner was not prejudiced by counsel's failure to stipulate to the prior convictions, in light of the significant evidence of petitioner's guilt. *Id.* Petitioner is not entitled to relief on his third claim.

In his sixth claim, petitioner argues that that trial counsel was ineffective in failing to call listed defense witnesses Patrick Atkins, Keonte Emerson, and Jonathon McAffee to testify. Petitioner also claims that counsel was ineffective for failing to interview and call Johnny King to testify. Petitioner raised this ineffective assistance of counsel claim for the first time in his original and supplemental post-conviction motions for relief from judgment.

Regarding Keonte Emerson and Jonathon McAffee, petitioner has provided no affidavits to either the state courts or to this Court regarding the nature of their proposed testimony. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). By failing to present any evidence from Mr. Emerson or Mr. McAffee to the state courts in support of his ineffective assistance of claim, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir.

12

2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)).  Petitioner failed to attach any offer of proof or any affidavits sworn by these proposed witnesses.  Petitioner offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether the witnesses would have been able to testify and what the content of these witnesses' testimony would have been.  In the absence of such proof,  petitioner is unable to establish that he was prejudiced by counsel's failure to call Mr. Emerson or Mr. McAffee to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).

Petitioner claims that trial counsel was ineffective for failing to call Patrick Atkins or Johnny King, because he claims that these two men would testify that they were present at the time of the shooting and would testify that petitioner was not the shooter.  Petitioner also claims that Mr. King would testify that Mr. Harris was not present at the time of the shooting and thus was lying about witnessing petitioner shoot the victim.

Mr. Atkins in his affidavit claims that he was present on the morning of the shooting and "clearly" saw a man with a mask covering his face going after Mr. Owens.  Mr. Atkins claims that petitioner was not present on the morning of April 24, 2009, the date of the shooting nor did he shoot at Mr. Owens.   Mr. Atkins claims that petitioner is innocent. *See* Affidavit of Mr. Atkins, Petitioner's Appendix F.  Mr. King in his affidavit claims that he was present at the crime scene on the morning of April 24, 2009 with Patrick Atkins, Keante Emerson, Jonathon McAffee, Donovan Yancy, and Cornelius Owens, but that petitioner was not there.  Mr. King claims that he saw a man about 6'0 to 6'1 wearing a mask chasing Mr. Owens.  Mr. King claims that he could not tell whether the person chasing Mr. Owens was a man or a woman because the person was wearing a mask.  Mr. King claims that it would be "impossible" to say that petitioner was the shooter because the shooter

13

was wearing a mask. *See* Affidavit of Mr. King, Petitioner's Appendix G.

The trial judge initially rejected the argument that Mr. Atkins and Mr. King would have

provided exculpatory evidence when rejecting petitioner's related newly discovered evidence claim:

> At trial, both the victim Cornelius Owens and witness Maurice Harris positively
> identified Defendant as the shooter. (TT2, 47, 109-110). Owens testified that as he
> was going to put his dog in the back yard, he encountered a male in black using his
> hand to mask his face. (TT2, 108). When the shooter's gun jammed he was able to
> see Defendant's face because he had to use both hands. (TT2, 116). He was also able
> to notice the cut or mark under Defendant's left eye as he came toward him which
> he also identified in court. (TT2, 131-132). Owens's fiancee testified that before he
> went to surgery Owens told her he knew who shot him and warned her not to go back
> home. (TT2, 167). The day after the surgery, he told her that he was shot by "D.T."
> (TT2, 168). Officer Ian Wengler testified that on April 26 Owens told him it was a
> person name "D.T." that shot him, but he did not know his real name. (TT2, 176).
> Detective Matt Gerow testified that Owens subsequently identified a photograph of
> Dyterius Roby as "D.T." in a photo lineup. (TT3, 24). Evidence was also presented
> that Defendant has a "D" tattooed on his right arm and a "T" tattooed on the other.
> (TT3, 27-28).
>
> Maurice Harris testified as to having made his observations from a neighboring
> porch. (TT2, 46). He heard a shot, and then saw Cornelius Owens run out of the
> back yard. (TT2, 74). When Owens got to the middle of the street, Harris saw the
> shooter coming out of the back yard. (TT2, 74). The shooter was wearing all black
> with the hoodie pulled up. (TT2, 72). He recognized the Defendant as the shooter
> when the gun jammed and he took his hand off his face. (TT2, 47). He was familiar
> with Defendant, having socialized with him in the past. (TT2, 54, 62).
>
> Having considered the substance of the new evidence, the Court agrees with the
> People that the evidence tendered is not likely to have led to a different result
> considering the weight of the evidence presented by the prosecution and the fact that
> it could only work to possibly impeach the witness testimony. The tendered
> evidence from Atkins and King is not directly exculpatory as neither witness
> purports to be able to testify that the shooter was not the Defendant, while both the
> victim Cornelius Owens and witness Maurice Harris testified at trial as to their
> identification of Roby as the shooter. That the affiants would testify Roby was not
> present with them prior to the shooting is also of no exculpatory value where the
> evidence presented at trial was that the shooter was in the victim's backyard.

*People v. Roby,* No. 09-032607-FC, * 5-6 (Saginaw Cty.Cir.Ct., July 2, 2014).

The trial judge later rejected petitioner's ineffective assistance of trial counsel claim for the

14

same reasons he rejected the newly discovered evidence claim, namely, that the witnesses could not provide exculpatory evidence. *Id., * 20.

Petitioner is not entitled to habeas relief on his claim for several reasons.

First, the trial judge reasonably concluded that neither Mr. Atkins nor Mr. King could provide exculpatory testimony because neither man could testify with certainty that petitioner was not the shooter, in light of their statements that the shooter was wearing a mask. A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F. 3d 520, 527 (6th Cir. 2004)(internal quotation omitted).

Secondly, to the extent that petitioner claims that Mr. Atkins and Mr. King could have impeached the credibility of Mr. Owens or Mr. Harris, he would not be entitled to relief because such evidence would have been cumulative of additional impeachment evidence offered by defense counsel at trial.

Mr. Harris admitted on cross-examination from defense counsel that he initially told Detective Gerow that he did not recognize the shooter and did not want to talk to the detective. Mr. Harris admitted that he told Detective Gerow that if he could him out of jail, Mr. Harris would be willing to tell the detective what he wanted to hear. (Tr. 8/25/10, pp. 79-81). Harris admitted that in he told Detective Gerow in his second statement that the people at the scene of the shooting started talking about who the shooter was before the police arrived. Mr. Harris admitted that his identification of petitioner may have been based in part on what the other persons at the shooting scene said. (*Id.*, p. 82). Mr. Harris also conceded that he had heard other persons suggest that his brother Dana was involved with the shooting and he was concerned when he spoke to the police about preventing his brother from being implicated in the crime. (*Id.*, p. 83).

15

Mr. Owens admitted on cross-examination that when he called 911 for help at the time of the shooting, he told the operator that he did not know who shot him.  Mr. Owens admitted that he did not like snitching on people. (Tr. 8/25/10, pp. 147-48).  Owens later admitted that he was a member of a gang, that he had pulled a gun on the Owens brothers, and that although he was ineligible to carry a firearm because of a prior felony conviction, he had not been charged with a crime. (*Id*., pp. 156-59).  Mr. Owens later admitted that he told Officer Wenger that he thought that Ronald or Steve Owens were involved in the shooting. (*Id.*, pp. 162-63).

Counsel further obtained admissions from Officer Ian Wegner that when he spoke to Mr. Cornelius Owens at the crime scene while he was being treated by the paramedics, Mr. Owens gave him the description of an unknown suspect.  When Officer Wegner spoke with Mr. Owens later at the hospital, Mr. Owens thought that Ron or Steve Owens had something to do with the shooting, but was unsure whether one of these men was the shooter. (Tr. 8/25/10, pp. 178-83).

Counsel later cross-examined Detective Gerow.  Detective Gerow admitted that neither Mr. Owens nor his girlfriend told him that Mr. Owens identified the shooter prior to him going into surgery. (Tr. 8/26/10, p. 54).  Detective Gerow admitted that Mr. Owens only mentioned in a subsequent police interview that Mr. Maurice Harris was present at the time of the shooting.  Detective Gerow indicated that Mr. Owens had not been initially forthcoming as to who was at the crime scene when the police initially spoke with him.  Detective Gerow admitted that in his initial police report he did not indicate that Mr. Owens said that Maurice Harris had been present at the time of the shooting. (*Id*., pp. 62-64).  Detective Gerow admitted that he initially contacted Mr. Harris when he was not in jail.  Mr. Harris told Detective Gerow he knew nothing about the shooting, but said that his brother Dana might know about the shooting.  Detective Gerow spoke to

16

Dana Harris at the jail and admitted that after speaking to him, went to a judge and got him released from jail. Detective Gerow indicated that he spoke with Mr. Maurice Harris three months later after he had now been locked up in jail. Detective Gerow testified that Mr. Maurice Harris was crying, scared, and hysterical and wanted to get out of jail. Detective Gerow admitted that he told Harris that he would try to get him out of jail. It was at this point that Mr. Harris made his statement implicating petitioner as the shooter. Detective Gerow later obtained Mr. Harris' release from jail. (*Id.*, pp. 64-69).

Defense counsel's failure to call Mr. Atkins or Mr. King to testify at petitioner's trial was a matter of reasonable trial strategy, and thus did not constitute ineffective assistance of counsel, where counsel instead chose to rely on discrediting the prosecution's witnesses by challenging the strength of their identification of petitioner as the shooter. *See Hale v. Davis,* 512 F. App'x. 516, 521-22 (6th Cir. 2013). Indeed, "[T]o support a defense argument that the prosecution has not proved its case it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates. All that happened here is that counsel pursued a course that conformed to the first option ... In light of the record here there was no basis to rule that the state court's determination was unreasonable." *Id.* (quoting *Richter*, 131 S. Ct. at 790)).

Petitioner is also not entitled to relief on his claim that counsel was ineffective for failing to call Mr. Atkins or Mr. King as defense witnesses, because such evidence would have been cumulative of evidence that had already been introduced to challenge the credibility of the victim and Mr. Harris. Petitioner was not prejudiced by counsel's failure to call Mr. Atkins or Mr. King because their testimony was cumulative of other evidence and witnesses presented at trial in support of petitioner's claim that Mr. Owens and Mr. Harris were not credible witnesses, so as to challenge

17

their identification of petitioner as the shooter. *Wong,* 558 U.S. at 22-23; *see also United States v. Pierce,* 62 F. 3d 818, 833 (6th Cir. 1995). In this case, the jury had significant evidence to call into question the two eyewitnesses' credibility and the reliability of their identification of petitioner. Because the jury was "well acquainted" with evidence that would have supported petitioner's claim that Mr. Owens and Mr. Harris were not believable, additional evidence in support of petitioner's defense "would have offered an insignificant benefit, if any at all." *Wong,* 558 U.S. at 23. Petitioner is not entitled to relief on his sixth claim.

### D. Claim # 4. The prosecutorial misconduct claim.

Petitioner claims he was denied a fair trial because of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F. 3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012)(quoting *Harrington*, 562 U.S. at 103).

Petitioner first contends that the prosecutor committed misconduct by introducing evidence that petitioner had tattoos. Petitioner claims that this evidence was irrelevant and was introduced solely to establish his propensity to commit the charged offenses.

The Sixth Circuit has observed that there are no Supreme Court cases which hold that a prosecutor's questions that simply call for answers that are inadmissible due to relevancy constitute prosecutorial misconduct that rises to the level of a federal due process violation. *See Wade v. White*, 120 F. App'x. 591, 594 (6th Cir. 2005). Therefore, the fact that the prosecutor may have introduced irrelevant evidence would not entitle petitioner to habeas relief. *Id.*

Petitioner next contends that the prosecutor committed misconduct by introducing the perjured testimony of Mr. Owens, Mr. Harris, and Detective Gerow.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000).

Petitioner's primary evidence in support of his perjury claim are the inconsistencies between

Mr. Owens' preliminary examination testimony and his trial testimony, as well as inconsistencies between Mr. Owens' trial testimony and Mr. Harris' trial testimony.  Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F. 3d at 343.  Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury either. *Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003)(citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)).

Petitioner next contends that Maurice Harris committed perjury when he denied that the prosecutor had dismissed a prior weapons charge against him, even though Mr. Harris admitted that the prosecutor had dismissed a possession of marijuana charge against him.  However, as the trial judge noted in rejecting this claim on post-conviction review, *see People v. Roby,* No. 09-032607-FC, * 10, the judge granted defense counsel's request to take judicial notice of the fact that Mr. Harris had a carrying a concealed weapons charge, as well as a possession of marijuana charge, that was dismissed.  Defense counsel later mentioned the dismissed weapons charge in his summation to the jury.  In the present case, the prosecution's failure to correct Mr. Harris' false testimony about his prior dismissed weapons charge does not entitle petitioner to habeas relief, in light of the fact that petitioner's own counsel had access to Mr. Harris' prior weapons charge and was able to introduce this into evidence. *See e.g., United States v. Alli*, 344 F.3d 1002, 1008 (9th Cir. 2003).

Petitioner lastly claims that Detective Gerow testified falsely when he indicated that the only reason that Mr. Harris was in jail was because of his failure to pay child support and a prior drug charge, but failed to acknowledge the pending weapons charge against Mr. Harris.

Petitioner has presented no evidence to this Court to suggest that Detective Gerow testified falsely.  Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some

factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir.1971).  More importantly, assuming that Detective Gerow testified falsely about his lack of knowledge of Mr. Harris' prior weapons charge, petitioner is still not entitled to habeas relief on his perjury claim, because he has failed to show that the prosecutor knew that Detective Gerow testified falsely. *See Rosencrantz v. Lafler,* 568 F. 3d 577, 587 (6th Cir. 2009).

Petitioner next contends that the prosecutor and police intimidated a witness from testifying for the defense.  Petitioner wanted to call Dernetrick Mounger to testify regarding the weapons charge that petitioner claims was Maurice Harris' main reason for testifying against petitioner.

The judge rejected this claim, when denying petitioner's post-conviction motion:

Defendant also argues that Detective Gerow intimidated witness Dernetrick Mounger from testifying for the defense and that such intimidation by law enforcement may be attributed to the prosecution.  Defendant's argument is unsupported where a special record was developed to establish the reasons Mounger was refusing to testify which fails to substantiate any claim that intimidating police tactics were the cause of his refusal to testify.  Mounger testified as to perceived "pressure" from a whole host of sources, including defense counsel, the police, and the fact he was given a court-appointed lawyer even though he did not want to talk.  Upon inquiry from defense counsel, Mounger testified, in pertinent part:

Q What pressure are you under?

A Well, right now, you gonna say you all gave me a lawyer that I don't want.  You know what I'm saying?  I told you I ain't gonna talk, but you trying to make me talk so that's enough to be under pressure don't you think?

Q So the only kind of pressure you're feeling --

A I'm feeling all kinds of pressure.

Q You're feeling pressure from me?

A Pressure from you, the police, him, this guy right here, everybody. I don't want to talk. I want to go back to to my jail cell.

(TT4, 53-54).

An offer of proof was also made that testimony could be taken that either Ronald or Steve Owens made a comment to Mounger the day before when they happened across Det. Gerow and Mounger while being transported. (TT4, 57). The record plainly fails to sustain conjecture that Mounger's refusal to testify was attributable to speculated acts of intimidation by Detective Gerow. Therefore, no entitlement to relief has been shown.

*People v. Roby,* No. 09-032607-FC, * 11.

A criminal defendant has a due process right to present witnesses to establish a defense to the charges. *Washington v. Texas*, 388 U.S. 14, 19 (1967). However, "To establish a claim of witness intimidation, a defendant must present 'government conduct which amounts to substantial interference with a witness' free and unhampered determination to testify' and must prove that any inappropriate conduct was not harmless." *United States v. Meda*, 812 F.3d 502, 517 (6th Cir. 2015)(*quoting United States v. Stuart*, 507 F.3d 391, 398 (6th Cir. 2007)).

Petitioner is not entitled to habeas relief for two reasons.

First, petitioner failed to show that Mr. Mounger's decision not to testify was attributable solely to the prosecutor or Detective Gerow. Mr. Mounger indicated that he felt pressure from "everybody" not to testify, including the judge, petitioner's defense counsel, and Mr. Mounger's own attorney. Petitioner failed to show that Mr. Mounger would have freely testified on petitioner's behalf but for the alleged pressure from Detective Gerow.

Secondly, assuming that Mr. Mounger was intimidated into not testifying about Mr. Harris' weapons charge, any such intimidation was harmless in light of the fact that other evidence was introduced at trial that the prosecutor had dismissed a weapons charge against Mr. Harris and that this witness was testifying against petitioner in exchange for this and other benefits.

In his fourth and fifth prosecutorial misconduct claims, petitioner alleges that the prosecutor

22

committed misconduct by introducing inadmissible evidence involving threats by the Owens brothers towards witnesses and inadmissible hearsay evidence involving the gun.

A prosecutor does not commit misconduct by introducing inadmissible evidence. *See Key v. Rapelje,* 634 F. App'x. 141, 148 (6th Cir. 2015). Petitioner is not entitled to relief on these claims.

In his related sixth claim, petitioner alleges that the prosecutor committed misconduct in his closing argument by arguing facts that had not been introduced into evidence by suggesting that the shooting against Mr. Owens was part of a murder-for-hire scheme. (Tr. 9/1/10, (Morning) p. 17).

Petitioner is not entitled to habeas relief on his claim that the prosecutor made remarks that were based upon purported facts that were not introduced into evidence, because the remarks were isolated and the evidence against petitioner in this case was strong. *See Macias v. Makowski,* 291 F. 3d 447, 453-54 (6th Cir. 2002). Any prosecutorial misconduct in attempting to inject facts that had not been introduced into evidence was also ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. (Tr. 9/1/10, (Morning) p. 63). *See Hamblin v. Mitchell,* 354 F. 3d 482, 495 (6th Cir. 2003). Petitioner is not entitled to relief on his prosecutorial misconduct claim.

### E. Claim # 5. The jury instruction claim.

Petitioner next contends that the jury was unconstitutionally instructed that they could infer intent to kill from petitioner's use of a dangerous weapon.

The judge gave the jurors the following instruction on intent:

You may infer that the defendant intended to kill if he used a dangerous weapon in a way that was likely to cause death. However, you may infer that the defendant intended to—likewise, you may infer that the defendant intended the usual results that follow from the use of a dangerous weapon. A gun is a dangerous weapon.

23

(Tr. 9/1/10 (Morning), p. 73).

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977). Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191. Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

The jury instruction in this case did not impermissibly shift the burden of proof to petitioner and thus did not violate the Due Process Clause. The language "you may infer" is unambiguously permissive language, and permissive inferences, as opposed to mandatory inferences, are not unconstitutional. *See Coe v. Bell*, 161 F.3d at 331-32. "A permissive presumption places no burden on the defendant but permits the jury to 'infer the elemental fact from proof by the prosecutor of the basic one.'" *Miskel v. Karnes*, 397 F.3d 446, 455-56 (6th Cir. 2005) (quoting *County of Ulster v. Allen*, 442 U.S. 140, 157 (1979)). The instruction here did not require the jury to presume that petitioner intended to kill the victim or that the jury must infer an intent to kill merely because petitioner possessed a firearm. Thus, the instruction did not shift the burden of proof to petitioner

24

or violate his due process rights.

### F. Claim # 7. The ineffective assistance of appellate counsel claim.

Petitioner lastly claims that appellate counsel was ineffective for failing to present his fourth through sixth claims on his appeal of right.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). This Court has already determined that petitioner's fourth through sixth claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in his handling of petitioner's direct appeal. Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

### G. The motion for an evidentiary hearing and for the appointment of counsel are DENIED.

Petitioner filed a motion for an evidentiary hearing and for the appointment of counsel.

A habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F. 3d 442, 459-60 (6th Cir. 2001). In light of the fact that petitioner's claims are devoid of merit, he is not entitled to an evidentiary hearing on his claims.

The Court will also deny the motion for the appointment of counsel. There is no constitutional right to counsel in habeas proceedings. *Cobas v. Burgess,* 306 F. 3d 441, 444 (6th Cir. 2002). Because petitioner's claims lacked any merit, this court denies petitioner's request for the

appointment of counsel. *See Lemeshko v. Wrona,* 325 F. Supp, 2d 778, 787 (E.D. Mich. 2004).

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. [1] The Court will deny petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed.R.App. P. 24(a).

## V. <u>ORDER</u>

Based upon the foregoing, **IT IS ORDERED** that:

(1) The petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) The motion for an evidentiary hearing and for the appointment of counsel [Dkt. # 13] is **DENIED**.

---

[1] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

(3) A certificate of appealability is **DENIED.**

(4) Petitioner will be denied leave to appeal *in forma pauperis*.


Dated:  July 27, 2017                              s/Sean F. Cox
                                                   Sean F. Cox
                                                   U. S. District Judge


I hereby certify that on July 27, 2017, the foregoing document was served on counsel of record via electronic means and upon Dyterius Roby via First Class mail at the address below:

Dyterius Roby
529870
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN
MUSKEGON, MI 49442


                                                   s/J. McCoy
                                                   Case Manager


27